UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

JACQUELYN S.,

        Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

        Defendant.
_____

**DECISION AND ORDER**

1:23-CV-00064 EAW

## INTRODUCTION

Represented by counsel, plaintiff Jacquelyn S. ("Plaintiff") brings this action pursuant to Titles II and XVI of the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner," or "Defendant") denying her applications for disability insurance benefits ("DIB") and supplemental security income ("SSI"). (Dkt. 1). This Court has jurisdiction over the matter pursuant to 42 U.S.C. § 405(g). Presently before the Court are the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure (Dkt. 6; Dkt. 8), and Plaintiff's reply (Dkt. 9). For the reasons discussed below, the Commissioner's motion (Dkt. 8) is granted and Plaintiff's motion (Dkt. 6) is denied.

## BACKGROUND

Plaintiff protectively filed her applications for DIB and SSI on April 29, 2020. (Dkt. 3 at 94, 296-97).[1] In her applications, Plaintiff alleged disability beginning March 2, 2020. (*Id.* at 94, 358). Plaintiff's applications were initially denied on August 14, 2020, and on reconsideration on February 9, 2021. (*Id.* at 94, 388-412). At Plaintiff's request, a hearing was held before administrative law judge ("ALJ") Stephen Cordovani in Buffalo, New York, on January 13, 2022. (*Id.* at 94, 150-207, 442-44). On March 2, 2022, the ALJ issued an unfavorable decision. (*Id.* at 91-132). Plaintiff requested Appeals Council review; her request was denied on November 23, 2022, making the ALJ's determination the Commissioner's final decision. (*Id.* at 9-15). This action followed.

## LEGAL STANDARD

### I.  District Court Review

"In reviewing a final decision of the [Social Security Administration ("SSA")], this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation omitted); *see also* 42 U.S.C. § 405(g). The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept

---

[1]  When referencing the page number(s) of docket citations in this Decision and Order, the Court will cite to the CM/ECF-generated page numbers that appear in the upper righthand corner of each document.

as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quotation omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation omitted); *see also Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence). However, "[t]he deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." *Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003) (citing *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984)).

## II. <u>Disability Determination</u>

An ALJ follows a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Parker v. City of New York*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ determines whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. §§ 404.1520(b), 416.920(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, in that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id*. §§ 404.1520(c), 416.920(c). If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a

finding of "not disabled." If the claimant does have at least one severe impairment, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id*. §§ 404.1520(d), 416.920(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement, *id*. §§ 404.1509, 416.909, the claimant is disabled. If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments. *See id*. §§ 404.1520(e), 416.920(e).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits the claimant to perform the requirements of his or her past relevant work. *Id*. §§ 404.1520(f), 416.920(f). If the claimant can perform such requirements, then he or she is not disabled. If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *Id*. §§ 404.1520(g), 416.920(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of the claimant's age, education, and work experience. *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation omitted).

**DISCUSSION**

**I.      The ALJ's Decision**

In determining whether Plaintiff was disabled, the ALJ applied the five-step sequential evaluation set forth in 20 C.F.R. §§ 404.1520 and 416.920. Initially, the ALJ determined that Plaintiff met the insured status requirements of the Act through December 31, 2025. (Dkt. 3 at 97). At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful work activity since March 2, 2020, the alleged onset date. (*Id*.).

At step two, the ALJ found that Plaintiff suffered from the severe impairments of: "obesity; history of left ankle open reduction and internal fixation ('ORIF') with osteoarthritis; left ventricular hypertrophy with diastolic heart failure; coronary artery disease ('CAD'); chronic kidney disease ('CKD') stage III; fibromyalgia; degenerative disc disease ('DDD') of neck; and lumbar spondylosis." (*Id.*). The ALJ further found that Plaintiff's medically determinable impairments of hypertension, hypocythemia, retinal hemorrhage of the eyes, gastroesophageal reflux disease, diverticulitis, obstructive sleep apnea, stress urinary incontinence, irritable bowel syndrome, depressive disorder, anxiety-related disorder, and/or personality disorder were non-severe. (*Id*. at 98-102).

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any Listing. (*Id*. at 25-26). The ALJ particularly considered the criteria of Listings 1.15, 1.18, and 4.02, as well as the effect of Plaintiff's obesity pursuant to Social Security Ruling 19-2p, in reaching his conclusion. (*Id.* at 106-07).

Before proceeding to step four, the ALJ determined that Plaintiff retained the RFC to perform sedentary work as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a), with the following additional limitations:

> [N]o ramps and stairs.  No ladders, ropes, or scaffolds; no balancing as that term is defined in the [Selected Characteristics of Occupations]; no crouching or crawling; [n]o work around hazards such as loud noise, unprotected heights, dangerous moving mechanical parts; no exposure to high heat, cold, wetness or humidity; avoid exposure to fumes, dusts, gases, poor ventilation, and other respiratory irritants; two additional 5-minute breaks per day.

(*Id.* at 107).  At step four, the ALJ relied on the testimony of a vocational expert ("VE") to conclude that Plaintiff was able to perform her past relevant work as an administrative assistant, insurance and benefits clerk, collections clerk, and data entry clerk.  (*Id.* at 118). The ALJ accordingly concluded that Plaintiff was not disabled as defined in the Act.  (*Id*. at 120).

## II. The Commissioner's Determination is Supported by Substantial Evidence and Free from Reversible Error

Plaintiff asks the Court to reverse or, in the alternative, remand this matter to the Commissioner, arguing that: (1) the ALJ erred in failing to incorporate mild mental limitations into the RFC finding; (2) "[t]he ALJ's decision, finding all of the opinion evidence partially persuasive, reflects impermissible picking and choosing and exercise of lay judgment"; and (3) the ALJ failed to apply the appropriate regulatory factors when evaluating opinion evidence.  (Dkt. 6-1 at 1).  The Court has considered these arguments and, for the reasons discussed below, finds them without merit.

### A.   Mental Limitations and the RFC Finding

In concluding that Plaintiff's mental impairments were non-severe at step two of the sequential evaluation, the ALJ found that Plaintiff had only mild limitations in concentrating, persisting, maintaining pace, and adapting and managing herself, and no limitations in understanding, remembering, or applying information, or interacting with others. (Dkt. 3 at 103-04). The ALJ found persuasive the opinion of consultative examiner Dr. Susan Santarpia, who examined Plaintiff on July 31, 2020, and concluded that she had mild impairment in regulating her emotions, controlling her behaviors, and maintaining well-being, but that she was nevertheless able to: understand, remember, and apply simple, as well as complex, directions and instructions; use reason and judgment to make work-related decisions; interact adequately with supervisors, coworkers, and the public; sustain concentration and perform a task at a consistent pace; sustain an ordinary routine and regular attendance at work; maintain personal hygiene and appropriate attire; and be aware of normal hazards and take appropriate precautions within normal limits. (*Id*. at 105; Dkt. 4 at 198-99). Plaintiff does not argue that ALJ erred in making his severity determination, but contends that he was nonetheless required to incorporate mental limitations into the RFC finding based on mild limitations identified at step two. (Dkt. 6-1 at 10-12). The Court is unpersuaded by this argument.

In deciding a disability claim, an ALJ is tasked with "weigh[ing] all of the evidence available to make an RFC finding that [is] consistent with the record as a whole." *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013). "When formulating a claimant's RFC, the ALJ must consider not only her severe impairments, but her non-severe impairments as

well." *Novas v. Kijakazi*, No. 22CV1020MKVBCM, 2023 WL 2614362, at *11 (S.D.N.Y. Mar. 8, 2023) (quotation omitted), *adopted*, 2023 WL 2613550 (S.D.N.Y. Mar. 23, 2023). "This does not mean, however, that the ALJ must include a specific limitation in the RFC corresponding to each of the claimant's non-severe impairments. To the contrary: by definition, an impairment which is not severe does not significantly limit the claimant's physical or mental ability to do basic work activities." *DuBois v. Comm'r of Soc. Sec.*, No. 20-CV-8422 (BCM), 2022 WL 845751, at *5 (S.D.N.Y. Mar. 21, 2022) (quotation and alteration omitted).

As particularly relevant here, "there are no regulations that mild limitations require mental limitations in the RFC." *Jane M. A. v. Comm'r of Soc. Sec.*, No. 19-CV-00808, 2021 WL 63066, at *5 (W.D.N.Y. Jan. 7, 2021). In other words, "while it is true that nonsevere impairments and 'mild' limitations *can* cause functional restrictions," an ALJ is not compelled to conclude that they do if such a finding is not supported by the record. *Lynette W. v. Comm'r of Soc. Sec.*, No. 19-CV-1168-FPG, 2021 WL 868625, at *4 (W.D.N.Y. Mar. 9, 2021) (emphasis in original).

Plaintiff has not demonstrated that the ALJ erred in considering her non-severe mental impairments when assessing her RFC. As an initial matter, Plaintiff is incorrect when she asserts that the ALJ "included no mental limitations whatsoever in the RFC[.]" (Dkt. 6-1 at 10). The ALJ included a limitation in the RFC for two additional five-minute breaks per day "to account for any symptoms affecting [Plaintiff's] ability to stay on task." (Dkt. 3 at 113). Plaintiff has offered no argument for why this limitation did not adequately account for the mild mental limitations identified by the ALJ at step two.

Moreover, the Court does not find that the ALJ's failure to include further mental limitations in the RFC finding was inconsistent with the evidence of record. In particular, Dr. Santarpia expressly opined that notwithstanding her mild mental limitations, Plaintiff was capable of understanding, remembering, and applying both simple and complex directions, of using reason and judgment to make work-related decisions, of interacting adequately with supervisors, coworkers, and the public, of sustaining concentration and performing a task at a consistent pace, of sustaining an ordinary routine and regular attendance at work, of maintaining personal hygiene and appropriate attire, and of being aware of normal hazards and taking appropriate precautions within normal limits. (Dkt. 4 at 198-99). Plaintiff has not identified any way in which the ALJ's RFC finding conflicts with this opinion.

Finally, the Court rejects Plaintiff's argument that "[t]he ALJ's finding of mild limitations in two domains of mental functioning facially conflicts with an ability to perform semi-skilled or skilled work[.]" (Dkt. 6-1 at 11). While district courts within the Second Circuit have held that "semiskilled work *may* be inconsistent with mild limitations in mental functioning," *Lorraine K. v. Kijakazi*, 20-CV-1469L, 2022 WL 1115456, *3 (W.D.N.Y. Apr. 14, 2022) (quotation omitted and emphasis added), Plaintiff has cited no cases in which a court has held that a finding of mild mental limitations at step two *requires* an ALJ to conclude at step four that a claimant cannot perform semi-skilled or skilled work. Nor was such a conclusion required here, where the medical evidence of record demonstrated that Plaintiff—notwithstanding her mild mental limitations—retained the abilities to deal with complex directions, use appropriate reason and judgment, perform at

an appropriate pace and with appropriate concentration, and be aware of hazards and take appropriate precautions. *See* 20 C.F.R. § 404.1568(b), (c) (defining semi-skilled work as "work which needs some skills but does not require doing the more complex work duties"; and skilled work as "work [that] requires qualifications in which a person uses judgment to determine the machine and manual operations to be performed in order to obtain the proper form, quality, or quantity of material to be produced").

> B.  **Evaluation of Medical Opinions**

Plaintiff's second and third arguments concern the ALJ's evaluation of the medical opinions of record. Plaintiff first argues that the ALJ engaged in "an obvious picking and choosing of the least restrictive portions of the opinions, while rejecting the most restrictive, and engaged in a lay analysis of complex medical data." (Dkt. 6-1 at 12). Plaintiff then argues that the ALJ did not appropriately apply the Commissioner's regulations when performing his assessment. (*Id*. at 16-18).

Under the regulations applicable to Plaintiff's claims, the ALJ much consider the persuasiveness of the medical opinions of record, and "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources." 20 C.F.R. §§ 404.1520c(a), 416.920c(a). When a medical source provides one or more medical opinions, the Commissioner will consider the medical opinions from that medical source together using the factors listed in paragraphs (c)(1) through (c)(5) of the applicable sections. *Id*. Those factors include: (1) supportability; (2) consistency; (3) relationship with the claimant, including the length of the treatment relationship, the frequency of

examinations, purpose and extent of the treatment relationship, and the examining relationship; (4) specialization; and (5) any other factors that "tend to support or contradict a medical opinion or prior administrative medical finding." *Id*. at §§ 404.1520c(c), 416.920c(c).

When evaluating the persuasiveness of a medical opinion, the most important factors are supportability and consistency. *Id*. at §§ 404.1520c(a), 416.920c(a). With respect to "supportability," "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." *Id.* at §§ 404.1520c(c)(1), 416.920c(c)(1). With respect to "consistency," "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id.* at §§ 404.1520c(c)(2), 416.920c(c)(2).

"[T]he ALJ's RFC conclusion need not perfectly match any single medical opinion in the record, so long as it is supported by substantial evidence." *Schillo v. Kijakazi*, 31 F.4th 64, 78 (2d Cir. 2022). It is further not error for an ALJ to give only partial weight to all of the medical opinions of record and make an RFC finding based on the record as a whole. *Id*. However, an ALJ may not "ignore[] or mischaracterize[] medical evidence or

cherry-pick[] evidence that supports his RFC determination while ignoring other evidence to the contrary." *Jackson v. Kijakazi*, 588 F. Supp. 3d 558, 585 (S.D.N.Y. 2022).

In this case, Plaintiff argues that the ALJ's conclusion that the opinions of treating physician Dr. Imran Chaudhary and consultative examiner Dr. Russell Lee were only "partially persuasive" was both improper cherry-picking and failed to comply with the Commissioner's regulations. The Court disagrees.

As to Dr. Chaudhary, he opined on November 6, 2020[2], that Plaintiff was capable of standing or walking for less than two hours in a work day and of sitting for at least six hours in a work day, that Plaintiff would need two unscheduled five-minute breaks per day during which she could sit quietly, that Plaintiff could frequently lift 10 pounds but never lift 20 pounds, that Plaintiff could rarely twist, stoop, crouch, squat, or climb stairs/ladders, and that Plaintiff would need to avoid exposure to a variety of environmental hazards. (Dkt. 4 at 517-20). Dr. Chaudhary further opined that Plaintiff was likely to be off task for 20% of a normal workday and that she would likely be absent from work about two days per month as a result of her impairments. (*Id*. at 520).

The ALJ credited significant portions of Dr. Chaudhary's opinion. However, he did not find persuasive the portions of Dr. Chaudhary's opinion "regarding . . . the ability to stand/walk less than 2 hours, rarely stoop, off-task time, and absences," because they were not consistent with Dr. Chaudhary's own contemporaneous treatment notes. (Dkt. 3 at 116). In particular, the ALJ explained that Dr. Chaudhary's treatment notes reflected "no

---

[2] Dr. Chaudhary also issued an opinion on April 10, 2020, but Plaintiff has not offered any argument regarding the ALJ's assessment of that opinion.

significant changes in the clinal examinations despite [Plaintiff's] varying complaints," improvements in Plaintiff's reported shortness of breath, and a recommendation for daily walking in August of 2021. (*Id*. at 116-17).

It is well-established that an ALJ may discredit those portions of an opinion that are inconsistent with the source's own treatment notes. *See, e.g., Domm v. Colvin,* 579 F. App'x 27, 28 (2d Cir. 2014). Plaintiff's disagreement with the ALJ's consideration of Dr. Chaudhary's opinion is not evidence of impermissible cherry-picking. Nor is the Court persuaded by Plaintiff's contention that the ALJ engaged in an "impermissible exercise of the ALJ's own lay judgment to reject the opinion of Plaintiff's treating cardiologist." (Dkt. 6-1 at 13). Again, it is the ALJ's role to assess the various medical opinions and reach an RFC finding that is consistent with the record as a whole. Neither the Commissioner's regulations nor Second Circuit case law support Plaintiff's apparent argument that an ALJ can discount a portion of a medical opinion only by identifying a directly contradictory medical opinion.

As to Dr. Lee, he opined on July 31, 2020, that Plaintiff had "moderate limitations for activities involving prolonged sitting, prolonged standing, bending, and lifting," that she was "limited for activities requiring moderate or greater exertion," and that she was "limited for activities requiring walking great distances." (Dkt. 4 at 205). The ALJ credited all of this opinion except for the moderate limitation on prolonged sitting, which he explained was inconsistent with the evidence of record showing "no documentation of any MRIs, CT scans, or nerve conduction studies" and "no treatment with a specialist such as a neurosurgeon, neurologist, orthopedist, or pain management specialist for" her spinal

conditions. (Dkt. 3 at 118). The ALJ further noted that Plaintiff's primary care providers "generally documented no significant deficits in range of motion, tenderness to palpation, or neurologic deficits during the period at issue." (*Id*.). Plaintiff again argues that this conclusion amounts to an improper lay interpretation of the record (Dkt. 6-1 at 15-16), but there is nothing improper about an ALJ considering whether a medical source's opinion is supported by the medical evidence. Indeed, the Commissioner's regulations require the ALJ to make such a determination.

Finally, even if Plaintiff was correct that the ALJ was required to rely on another medical opinion to discount portions of Dr. Chaudhary's and Dr. Lee's opinions, the Court notes that the ALJ also found partially persuasive the opinions of stage agency medical consultants Dr. V. Baranos and Dr. D. Brauer, who opined that Plaintiff "could perform light exertion except stand and/or walk 4 hours with occasional postural activities and avoid even moderate exposure to hazards." (Dkt. 3 at 118). These opinions provide a firm basis for the ALJ to have discredited the more restrictive portions of Dr. Lee's and Dr. Chaudhary's opinions.

Turning finally to Plaintiff's regulation-based argument, she contends that the ALJ erred in considering Dr. Lee's and Dr. Chaudhary's opinions because he failed to discuss their consistency with one another. (*Id*. at 18-19). However, the only portion of Dr. Lee's opinion that the ALJ did not credit was his opinion that Plaintiff had a moderate limitation in prolonged sitting. Dr. Chaudhary, on the other hand, had opined that Plaintiff was capable of sitting for *at least* six hours in a workday. These opinions are not, on their face,

mutually consistent such that it was reversible error for the ALJ not to explicitly discuss the matter in his decision.

## **CONCLUSION**

For the foregoing reasons, the Commissioner's motion for judgment on the pleadings (Dkt. 8) is granted and Plaintiff's motion for judgment on the pleadings (Dkt. 6) is denied. The Clerk of Court is directed to enter judgment and close this case.

SO ORDERED.

_____
ELIZABETH A. WOLFORD
Chief Judge
United States District Court

Dated:  January 30, 2024
        Rochester, New York